

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 13, 1957

Hon. J. Albert Dickie
County Attorney
Coryell County
Gatesville, Texas

Opinion No. WW-258

Re: Can the Commissioners'
Court require the Central
Texas Cattlemen's Associa-
tion to render and pay
taxes on stock which are
located in Coryell County
on the Fort Hood Reserva-
tion?

Dear Mr. Dickie:

You requested the opinion of this office upon two
questions which we shall later state after giving the facts
upon which your request is based.

The facts are: The Governor has given a deed of
Cession to the Federal Government on certain lands which
comprise the Fort Hood Military Reservation. Part of these
lands lie within Coryell County, Texas, and it is this part
of the land covered by the deed from the Governor with which
we are here concerned. By a lease agreement dated March 4,
1954, the Secretary of the Army leased to the Central Texas
Cattlemen's Association, a private corporation, incorporated
under the laws of the State of Texas, the land here invloved
for a term of five years. The primary purpose for which
this land was leased by the Federal Government to the Corpora-
tion is for grazing cattle. The Stockholders of the Corpora-
tion have an agreement between themselves as to the number
of cattle and the terms under which the stockholders of the
Corporation are privileged to graze cattle owned by them
upon the land covered by the lease.

We do not deem it necessary to give further details
of the lease or the conditions upon which the Stockholders of
the Corporation may graze their cattle upon the leased land.

You ask two questions as follows:

(1) Does the Commissioners' Court have the authority
to require the Central Texas Cattlemen's Association, a cor-
poration, to render for tax purposes livestock which the
individual members own and graze on the Fort Hood Military
Reservation?

(2) Does the Commissioners' Court have the authority to require the rendition for tax purposes livestock owned by persons whether individuals or corporations which are located on the Fort Hood Military Reservation?

We shall answer your questions in the order stated. It should first be observed that the Commissioners' Court does not have any authority to require the assessment of taxes. This authority is by law conferred upon the Tax Assessor and not upon the Commissioners' Court. The case of Crocker v. Santo Con. Ind. Sch. Dist., 116 S.W. 2d 750 (Ct. of Civ. App. 1938) states the law as follows:

"'Some confusion is manifest * * * regarding the nature and functions of renditions of property and assessments.

"'It should be borne in mind that a taxpayer never assesses his property for taxes. Not even a commissioners' court has authority to do that. The assessment of property is peculiarly the duty and responsibility of a tax assessor. The jurisdiction of the commissioners' court with reference to assessments is confined to raising or lowering assessments as incident to its duties as a board of equalization. It has no power to add property to the tax rolls not previously assessed, nor to take property from them. * * *'" (Emphasis added)

The constitutional and statutory authority of the Commissioners' Court as is observed from the foregoing statement of the law in the Crocker case is to act as a Board of Equalization and is confined to raising or lowering assessed valuation. Moreover, under the facts submitted, the Central Texas Cattlemen's Association does not own the cattle grazed upon the leased premises. The ownership of the cattle is in the individual corporate stockholders.

Turning next to your second question, the answer is the same as to your first insofar as the authority of the Commissioners' Court to require the individual share holders in the corporation to render cattle owned by them. The Tax Assessor has the authority to assess against each individual share holder all of the cattle owned by them which they graze upon the leased land to the same extent and in the same

manner as cattle owned by others not stockholders in the corporation and not grazed upon the leased land.

The lease agreement with the corporation and the agreement between the share holders in regard to grazing cattle upon the leased land are wholly immaterial to the taxability of the cattle owned by the share holders of the corporation. If the share holders of the corporation do not voluntarily render to the Tax Assessor the cattle owned by them for taxation the Tax Assessor should assess against each owner the cattle owned by them upon the unrendered roll which assessment will be just as valid as an assessment made upon the voluntary rendition of the taxpayer.

Under the facts submitted there is no question of immunity from taxation of the cattle grazed upon the leased land because they are grazed upon a military reservation which has been ceded to the Federal Government by deed from the Governor of the State. Whatever may be the scope of the deed from the Governor to the Federal Government jurisdiction insofar as here involved has been relinquished by the execution of the lease to the corporation.

Article 5248, V.C.S., reads as follows:

"The United States shall be secure in their possession and enjoyment of all lands acquired under the provisions of this title; and such lands and all improvements thereon shall be exempt from any taxation under the authority of this State so long as the same are held, owned, used and occupied by the United States for the purposes expressed in this title and not otherwise; provided, however, that any personal property located on said lands which is privately owned by any person, firm, association of persons or corporation shall be subject to taxation by this State and its political subdivisions; and provided, further, that any portion of said lands and improvements which is used and occupied by any person, firm, association of persons or corporation in its private capacity, or which is being used or occupied in the conduct of any private business or enterprise, shall be subject to taxation by this State and its political subdivisions.

As amended Acts, 51st Leg., 1st C.S.,
p. 105, ch. 37, § 1." (Emphasis added)

The foregoing statute became effective March 17, 1950. The deed of cession from the Governor to the land embraced within the Fort Hood Reservation upon which the cattle are grazed was given September 6, 1950, and was accepted by the Federal Government November 3, 1950. It thus appears that the foregoing statute was in effect at the time the deed of cession was given by the Governor and accepted by the Federal Government. The Governor had no authority to give a deed of cession to the Federal Government contrary to the provisions of the statute which we have underscored, which provides that "any personal property located on said lands which is privately owned by any person, firm, association of persons or corporation shall be subject to taxation by this State and its political sub-divisions." It is a well recognized principal of law in this State that contracts made and entered into by statutory authority that the terms of the statute will be read into the contract, although not expressly embodied therein. Empire Gas and Fuel Company v. State, 121 Tex. 138, 47 S.W. 2d 265 (1932).

You are therefore respectfully advised that all cattle owned by individuals or corporations and grazed on said lands should be assessed for ad valorem taxation by the Tax Assessor of Coryell County to the same extent and in like manner as all other cattle in the county not grazed upon said leased land. If such cattle are not voluntarily rendered for taxation by the owners thereof the Tax Assessor should place them on the unrendered roll.

## SUMMARY

Cattle grazed upon land leased by the Federal Government to the Central Texas Cattlemen's Association, a private corporation, are subject to ad valorem taxes to the same extent and in the same manner as cattle not grazed upon said leased land. Said cattle are not immune from taxation because grazed upon a part of a military reservation which has been leased by the Federal Government to a private corporation for grazing purposes. Article 5248,

Vernon's Civil Statutes quoted
above specifically provides that
personal property privately owned
and located upon land ceded by the
Governor to the Federal Government
is subject to ad valorem taxation.

Very truly yours,

WILL WILSON
Attorney General

By L. P. Lollar
Assistant

LPL:gs

APPROVED:

OPINION COMMITTEE
George P. Blackburn, Chairman

J. C. Davis

John Reeves

C. K. Richards

W. V. Geppert

REVIEWED FOR THE ATTORNEY GENERAL

By
     James N. Ludlum